[Cite as *State ex rel. Huttman v. Parma*, 2016-Ohio-5624.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103691**

## STATE EX REL. ANDY HUTTMAN, ET AL.

PLAINTIFFS-APPELLEES

vs.

## CITY OF PARMA, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-781740

**BEFORE:** E.A. Gallagher, P.J., E.T. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** September 1, 2016

**ATTORNEYS FOR APPELLANTS**

John T. McLandrich
Robert F. Cathcart
Frank H. Scialdone
Mazanec, Raskin, Ryder Co., L.P.A.
100 Franklin Row
34305 Solon Road
Solon, Ohio 44139

Gregory J. Degulis
Louis L. McMahon
McMahon, Degulis L.L.P.
812 Huron Road
Cleveland, Ohio 44115

Timothy G. Dobeck
Boyko & Dobeck
7393 Broadview Road
Suite A
Seven Hills, Ohio 44131

**ATTORNEYS FOR APPELLEES**

**FOR ANDY HUTTMAN**

David M. Paris
Kathleen St. John
Nuremburg Paris Heller & McCarthy
600 Superior Avenue
Suite 1200
Cleveland, Ohio 44114

**FOR KEVIN KOHOUT**

Steven D. Liddle
Laura L. Sheets
Liddle & Dubin, P.C.
975 E. Jefferson Ave.
Detroit, Michigan 48207

**FOR THE OHIO MUNICIPAL LEAGUE**

Yazan S. Arshrawi
Philip K. Hartmann
Frost, Brown, Todd L.L.C.
10 West Broad Street
Suite 2300
Columbus, Ohio 43215

Garry E. Hunter
175 S. Third Street, #510
Columbus, Ohio 43215

EILEEN A. GALLAGHER, P.J.:

**{¶1}** The city of Parma ("Parma"), appeals the decisions of the Cuyahoga County Court of Common Pleas denying its motion for summary judgment on political subdivision immunity and in certifying a class in favor of plaintiffs-appellees. For the following reasons, we affirm, in part, and reverse, in part.

**Facts and Procedural Background**

**{¶2}** This case arises from the "backup" flooding of Parma's sanitary sewer system into the basements of a number of Parma residents, including the named plaintiffs, during heavy rainfall on February 28, July 19 and July 23, of 2011.

**{¶3}** Plaintiffs filed a class action complaint on May 1, 2012, asserting that water and sewage invaded their properties due to the failure of Parma to exercise reasonable care in the maintenance and repair of its sanitary sewer system. Plaintiffs set forth causes of action for trespass, nuisance and negligence.

**{¶4}** On April 8, 2015, plaintiffs filed a motion for class certification. On April 12, 2015, Parma moved for summary judgment asserting political subdivision immunity. On September 29, 2015, the trial court granted plaintiffs' motion for class certification and denied Parma's motion for summary judgment.

**Law and Analysis**

### I. Political Subdivision Immunity

**{¶5}** Parma argues in its first assignment of error that the trial court erred in denying its motion for summary judgment on the grounds of political subdivision immunity. Ordinarily, an order denying a motion for summary judgment is not a final and appealable order within the scope of Civ.R. 60(B); rather, it is an interlocutory order. However, an order denying a political subdivision the benefit of claimed immunity from liability is expressly deemed a "final order" under R.C. 2744.02(C) and is thus immediately appealable. *See Sullivan v. Anderson Twp*., 122 Ohio St.3d 83, 2009-Ohio-1971, 909 N.E.2d 88, ¶ 12-13. Our review, however, is limited to alleged errors involving the denial of "the benefit of an alleged immunity from liability." *Windsor Realty & Mgt., Inc. v. N.E. Ohio Regional Sewer Dist.*, 8th Dist. Cuyahoga No. 103635, 2016-Ohio-4865, ¶ 15.

**{¶6}** Our review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 1998-Ohio-389, 696 N.E.2d 201. The party moving for summary judgment bears the burden of showing

that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

**{¶7}** Ohio's Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744, absolves political subdivisions and their employees of tort liability, subject to certain exceptions. Whether a political subdivision or an employee of a political subdivision is entitled to statutory immunity under Chapter 2744 is a question of law for determination by the court. *See, e.g., Srokowski v. Shay*, 8th Dist. Cuyahoga No. 100739, 2014-Ohio-3145, ¶ 11, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 291, 595 N.E.2d 862 (1992), and *Feitshans v. Darke Cty.*, 116 Ohio App.3d 14, 19, 686 N.E.2d 536 (2d Dist.1996).

**{¶8}** To determine whether a political subdivision is entitled to immunity from civil liability under R.C. Chapter 2744, a reviewing court must conduct a three-tiered analysis. *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 9, citing *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 1998-Ohio-421, 697 N.E.2d 610. The first tier is the general rule that a "political subdivision" is not liable "in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1); *Hortman* at ¶ 10-11.

**{¶9}** If the political subdivision is entitled to immunity under R.C. 2744.02(A)(1), then the court must determine, under the second tier of the analysis, whether any of the

five exceptions to immunity set forth in R.C. 2744.02(B) applies. *Hortman* at ¶ 10-11. If an exception to immunity applies, then a third tier of analysis is performed to determine whether the political subdivision can establish one of the statutory defenses to liability set forth in R.C. 2744.03 to reinstate immunity. *Hortman* at ¶ 12.

{¶10} In this case, the parties do not dispute that Parma is a political subdivision entitled to the general grant of immunity under R.C. 2744.02(A)(1). *See* R.C. 2744.01(F) (definition of political subdivision). Their dispute lies solely in the application of the second tier.

{¶11} Pursuant to R.C. 2744.02(B)(2), political subdivisions are liable for "negligent performance of acts by their employees with respect to proprietary functions." Relevant to this case, R.C. 2744.01(C)(2)(l) identifies as a governmental function "the provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including but not limited to, a sewer system," making these responsibilities immune from political-subdivision liability. By contrast, R.C. 2744.01(G)(2)(d) identifies "the maintenance, destruction, operation, and upkeep of a sewer system" as a proprietary function for which civil liability may attach.

{¶12} Parma argues that the plaintiffs have failed to create a genuine issue of material fact with respect to whether the basement backups at issue were caused by a lack of maintenance. Parma argues that plaintiffs have failed to account for the contribution to the backups attributable to (1) poor design of the sanitary sewer system or the need for capital reconstructive improvements for which Parma would be immune, and (2) laterals,

drains, and downspouts that third-party residents have illegally tied into the sanitary sewer system.[1]

{¶13} There is also no dispute amongst the parties that inflow and infiltration during heavy rain events on February 28, July 19, and July 23, of 2011 caused Parma's sanitary sewer system to experience a "surcharge" that caused the basement back-ups at issue.[2] The dispute amongst the parties is the cause of such inflow and infiltration.

{¶14} The record reflects that Parma operates separate storm and sanitary sewer systems. While Parma notes that not all of the storm and sanitary sewers are separated and, thus, cites this fact as a design flaw that accounts for a portion of inflow and infiltration. Parma concedes that most of the sanitary sewer system is separated.

{¶15} Plaintiff's expert, Rick Arbour, opined that Parma's sanitary sewer system is not designed to carry storm water and lacks sufficient hydraulic capacity to convey excessive inflow and infiltration. However, due to the separated nature of Parma's storm and sanitary sewers, the amount of rainfall should not affect the operation of the later or cause "surcharging" and basement backups. Arbour opined that Parma failed to meet the standard of care in maintaining a sanitary sewer system and that Parma's breach of the standard of care caused the "surcharging" and basement backups. Arbour based

_____

[1]The parties have not presented any legal authority addressing whether or not part of Parma's duty to undertake ordinary maintenance of the sewer system included inspection and enforcement duties related to the purported illegally connected drains and downspouts.

[2]A study commissioned by Parma and conducted by CT Consultants attributed the cause of the flooding of numerous Parma homeowners on the relevant dates to "heavy rains overloading the drainage system and sanitary sewer system due to [infiltration and inflow]."

his opinion on documentary evidence including 4,828 homeowner complaints regarding flooding or sewage backups in Parma over a 15-year period, studies that evidence Parma's awareness of excess storm water inflow into the system as well as the deterioration of the physical condition of its sewers and reports prepared by Cuyahoga County documenting "blocked pipes due to accumulated debris, broken pipes in need of repair and/or replacement, laterals in need of cleaning and over capacity sanitary sewers due to stormwater entering the system and the build up of grease."

{¶16} Arbour found that Parma engaged in "virtually no preventive maintenance of its sewer system" based on admissions made by Parma's Public Works Coordinator and Supervisor of Sewers. Arbour found that Parma had made no effort to locate or repair sources of infiltration and inflow. Arbour opined that Parma was negligent in failing to accelerate its efforts to find and fix defects that were the source of the excessive inflow and infiltration to satisfy the minimum standard of care. Arbour also concluded that Parma was negligent in failing to develop and implement capacity, management, operations and maintenance programs to reduce backups. Arbour concluded that if the above defects, which accumulated over a long period of time, had been addressed in an effective and timely manner, such actions would have prevented the backups and flooding that occurred on the relevant dates.

{¶17} Parma notes that Cuyahoga County assumed responsibility for maintaining Parma's sanitary sewer system in 2009 and cleaned the sewers from 2009 until 2011. However, Parma concedes that there is no information in the record regarding which

portion of the sewers were cleaned or repaired prior to the 2011 basement backup events or what impact, in any, the county's cleaning and maintenance had on those events.

{¶18} Finally, Parma argues that the basement back-up events may have been caused by poor design of the sanitary sewer system, the need for capital reconstructive improvements, or third-party drains and downspouts illegally tied into the sanitary sewer system. Although Parma would be entitled to immunity for the first two problems and potentially not liable for the latter, these potential causes do not entitle Parma to summary judgment at this time.

{¶19} It is well accepted that two factors can combine to produce damage, each being considered a proximate cause of the injury. *Czarney v. Porter*, 166 Ohio App.3d 830, 2006-Ohio-2471, 853 N.E.2d 692, ¶ 7 (8th Dist.), citing *Johnson v. Pohlman*, 162 Ohio App.3d 240, 2005-Ohio-3554, 833 N.E.2d 313 (8th Dist.). If the original negligence continues to the time of the injury and contributes substantially thereto in conjunction with an intervening act, each may be a proximate, concurring cause for which full liability may be imposed. *Id.*, citing *Garbe v. Halloran*, 150 Ohio St. 476, 83 N.E.2d 217 (1948), paragraph one of the syllabus.

{¶20} The fact that some other cause concurred with the negligence of a defendant in producing an injury, does not relieve him from liability unless it is shown such other cause would have produced the injury independently of defendant's negligence. *Snyder v. Giant Eagle*, 8th Dist. Cuyahoga No. 103176, 2016-Ohio-708, ¶ 17, citing *Piqua v. Morris*, 98 Ohio St. 42, 120 N.E. 300 (1918), paragraph one of the syllabus. Parma has

failed to make such a showing entitling it to summary judgment on the record before us. Furthermore, such proximate causation questions typically present factual issues to be decided by the trier of fact. *Id.*; *Czarney* at ¶ 8, citing *Heise v. Orra*, 8th Dist Cuyahoga No. 66172, 1995 Ohio App. LEXIS 680 (Feb. 23, 1995); *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 269, 1993-Ohio-12, 617 N.E.2d 1068; *Nice v. Marysville*, 82 Ohio App.3d 109, 118, 611 N.E.2d 468 (3d Dist.1992) (finding a genuine issue of material fact where it could not be conclusively determined who or what damaged a city's storm sewer and the city could be found negligent based on inferences viewed most favorably to the plaintiffs.).

{¶21} Construing the evidence in a light most favorable to the plaintiffs, the evidence cited and the causation opinion presented by plaintiffs's expert, in this instance we find that genuine issues of material fact remain for the jury to decide on the question of causation.

{¶22} Appellant's first assignment of error is overruled.

**II. Class Certification**

{¶23} Parma argues in its second assignment of error that the trial court abused its discretion in certifying the class.

{¶24} A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Califano v. Yamasaki*, 442 U.S. 682, 700-701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), and "[t]o come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his

compliance' with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. ____, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013), quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).

**{¶25}** "A trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion." *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987), syllabus. We apply the abuse of discretion standard in reviewing class action determinations to give deference to "the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket." *Id*. at 201.

**{¶26}** Nevertheless, "the trial court's discretion in deciding whether to certify a class action is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23." *Hamilton v. Ohio Savs. Bank*, 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998). The trial court may only certify a class if it finds, after a rigorous analysis, that the moving party has demonstrated that all the factual and legal prerequisites to class certification have been satisfied. *Id*.

**{¶27}** In *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 466 N.E.2d 875 (1984), the Ohio Supreme Court stated, "[c]lass action certification does not go to the merits of the action." *Id*. at 233. However, deciding whether a claimant meets the burden for class certification pursuant to Civ.R. 23 requires the court to consider what will have to be proved at trial and whether those matters can be presented by common proof. 7AA Wright, Miller & Kane, *Federal Practice and Procedure*, Section 1785 (3d

Ed.2005). Thus, in resolving a factual dispute when a requirement of Civ.R. 23 for class certification and a merit issue overlap, a trial court is permitted to examine the underlying merits of the claim as part of its rigorous analysis, but only to the extent necessary to determine whether the requirement of the rule is satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir.2011).

> Civ.R. 23 provides seven requirements for maintaining a class action:
> (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met.

*Cantlin v. Smythe Cramer Co.*, 8th Dist. Cuyahoga No. 103339, 2016-Ohio-3174, ¶ 18, quoting *Warner v. Waste Mgmt.*, 36 Ohio St.3d 91, 521 N.E.2d 1091 (1988); Civ.R. 23.

**{¶28}** In this case, we find merit to Parma's argument that the predominance requirements under Civ.R. 23(B)(3) are not satisfied. Civ.R. 23(B)(3) permits maintenance of a class action where:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**{¶29}** Certification pursuant to Civ.R. 23(B)(3) requires the trial court to make two findings (1) "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and (2) "that a class

action is superior to other available methods for the fair and efficient adjudication of the controversy." This inquiry requires a court to balance questions common among class members with any dissimilarities between them, and if the court is satisfied that common questions predominate, it then should "consider whether any alternative methods exist for resolving the controversy and whether the class action method is in fact superior." *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St. 3d 373, 2013-Ohio-4733, 999 N.E.3d 614, ¶ 29, quoting *Ealy v. Pinkerton Govt. Servs.*, 514 Fed.Appx. 299 (4th Cir.2013).

{¶30} "For common questions of law or fact to predominate, it is not sufficient that such questions merely exist; rather, they must represent a significant aspect of the case. Furthermore, they must be capable of resolution for all members in a single adjudication." *Marks*, 31 Ohio St.3d at 204, 509 N.E.2d 1249. Where common issues predominate, the class members "will prevail or fail in unison." *Musial Offices, Ltd. v. Cty. of Cuyahoga*, 2014-Ohio-602, 8 N.E.3d 992, ¶ 32 (3d Dist.), quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 2, 133 S.Ct. 1184, 1196, 185 L.Ed.2d 308 (2013). Thus, in determining a motion for class certification, a court must consider what the plaintiffs will have to prove at trial and whether those matters can be presented by common proof. *See Cullen* at ¶ 17.

{¶31} In this case, while a common question exists regarding Parma's violation of the relevant standard of care due to historical negligence in the maintenance of its sewers, we cannot say that that question predominates for the same reason that we found genuine issues of material fact remain in the first assignment of error. Due to the widely varying

conditions of Parma's sanitary sewer problems, liability at this time cannot be determined across the class but, instead, appears as though it must be examined on a house-by-house basis. Parma correctly argues that due to the three overarching potential causes of the basement back-ups: (1) negligent maintenance, if any, of each home's relevant local sewer lines existing at the time of the events, (2) design defects in Parma's sanitary sewer system and (3) improperly connected drains and downspouts from other residents which vary from street to street— it presently appears that the resolution of factual questions pertaining to proximate causation will be unique to each homeowner.

{¶32} As an example of the nebulous nature of broadly determining causation across all residents of Parma we note that the complaint reflects that the flooding did not uniformly occur even with the named plaintiffs. Some of the plaintiffs experienced flooding on February 28 and July 19. Others experienced flooding only on July 19. Another plaintiff experienced flooding on July 19 and July 23. None of the plaintiffs experienced flooding on all three dates.

{¶33} On the limited facts before us we cannot say that common questions of law or fact predominate. While our opinion does not completely foreclose class certification in the future, we find that under the record the trial court abused its discretion in granting class certification.

{¶34} Appellant's second assignment of error is sustained.

{¶35} The judgment of the trial court is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
PATRICIA A. BLACKMON, J., CONCUR